[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 19, 2005
THOMAS K. KAHN
CLERK

No. 04-10823

D. C. Docket No. 02-02905CV-ODE-1

A.A.A. ALWAYS OPEN BAIL BONDS, INC.,
d.b.a. Always Open Bail Bonds,
CRAIG L. LADNER,

Plaintiffs-Appellees,
Cross-Appellants,

versus

DEKALB COUNTY, GEORGIA,
a political subdivision of the State of Georgia,
THOMAS E. BROWN, individually, and in
his capacity as Sheriff of DeKalb County, Georgia,

Defendants-Appellants,
Cross-Appellees.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

**(April 19, 2005)**

Before BLACK, WILSON and STAPLETON[*], Circuit Judges.

PER CURIAM:

Because we write only for the parties who are familiar with the facts, we do not restate them below. On January 20, 2004, the United States District Court for the Northern District of Georgia issued an order dismissing without prejudice all of A.A.A.'s constitutional claims as not ripe,[1] except for its claim of a procedural due process violation. The Court held that A.A.A. had a constitutionally protected property interest in its application for a certificate of authority sufficient to allege a procedural due process claim, and denied Sheriff Brown qualified immunity with regard to that claim. As a result, the Court granted in part A.A.A.'s motion for injunctive relief and ordered Sheriff Brown to render a decision on A.A.A.'s application within 45 days.

DeKalb County and Sheriff Brown appeal the denial of their motion for summary judgment based on qualified immunity as well as the grant of preliminary injunctive relief. A.A.A. cross appeals from the dismissal of its other claims. For the reasons set forth below, we reverse and remand.

---

[*]Honorable Walter K. Stapleton, United States Circuit Judge for the Third Circuit, sitting by designation.

[1] The Court also dismissed with prejudice a claim for intentional infliction of economic harm; this claim is not before us on appeal.

I.  The Procedural Due Process Claim

We turn first to Appellants' procedural due process claim.

To establish a violation of procedural due process, a party must show that it has been deprived of a constitutionally protected property interest; through state action; and the procedure for doing so was constitutionally inadequate.  *Foxy Lady, Inc. v. City of Atlanta, Georgia*, 347 F.3d 1232, 1236 (11th Cir. 2003). Appellants contend that the District Court improperly found a constitutionally protected property right in A.A.A.'s application for a certificate of authority to operate a bail bonding company.  We agree.

We first note that in order to establish a constitutionally protected property interest, a person must have more than a "unilateral expectation of it;" instead, one must have a "legitimate claim of entitlement to it."  *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).  The U.S. Supreme Court has recognized that property interests inure to already-acquired benefits.  In *Bell v. Burson*, 402 U.S. 535, 539 (1971), the Court held that "once licenses are issued ... their continued possession may become essential in the pursuit of a livelihood.  Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees."

However, when addressing a plaintiff who is merely an applicant for a license or benefit, as here, the critical inquiry becomes whether the state statute

grants discretion to the decisionmaker who approves or denies the license.[2]  With regard to determining who is an "acceptable surety" to write bonds in their respective counties, Georgia sheriffs have a statutory mandate to exercise broad discretion.  The extensive discretion of sheriffs is plainly evident in Georgia statutes:

> (a) "Code section shall not be construed to require a sheriff to accept a professional bonding company or bondsperson as a surety." O.C.G.A. § 17-6-15(b)(2);
>
> (b) Sheriffs can create additional rules and regulations to determine "under what conditions sureties may be accepted." O.C.G.A. § 17-6-15(b)(1);
>
> (c) "If the sheriff determines that a professional bonding company is an acceptable surety, the rules and regulations shall require, but shall not be limited to, the following [list of rules]." O.C.G.A. § 17-6-15(b)(1)(H); and
>
> (d) A professional bondman "must" be approved by the "sheriff in the county where the bonding business is conducted." O.C.G.A. § 17-6-50(b), (b)(4).

---

[2]  *See, e.g.*, *Baldwin v. Daniels*, 250 F.3d 943 (5th Cir. 2001) ("Discretionary statutes do not give rise to constitutionally protectable interests."); *Shaner v. United States*, 976 F.2d 990, 994-95 (6th Cir. 1992) (no property interest in application for emergency loan from the Farmers Home Administration (FmHa) because the FmHa had "broad discretion in determining whether to approve an application"); *New York State Nat'l Org. For Women v. Pataki*, 261 F.3d 156, 164 (2d Cir. 2001) ("Where, as here, a purported property interest is contingent on the exercise of executive discretion, no legitimate claim of entitlement exists."); *Neuwirth v. Louisiana State Bd. of Dentistry*, 845 F.2d 553 (5th Cir. 1988) (plaintiff did not have a property interest in receiving a reciprocal license to practice dentistry in another state because the Dentistry Board has broad discretion in granting such licenses); *see also Leis v. Flynt*, 99 S. Ct. 698 (1979) (there was no property interest in plaintiffs' application to appear *pro hac vice* because under Ohio law, the trial court has considerable discretion to approve or deny such an application).

Under these statutes, the sheriff has discretion to decide whether a candidate is acceptable, and the statute "shall not" require a sheriff to accept any specific applicant. Therefore, even if an applicant met the minimum requirements for a certificate of authority prescribed by statute, it cannot claim any entitlement to that certificate because the statute expressly provides for the sheriff to exercise discretion to decide, generally, how many, and specifically, to which, applicants the sheriff will issue certificates. Because of this grant of discretion to the sheriff, the Georgia Supreme Court has held that an applicant for authority to be a professional bondsman does not have a constitutionally protected right. *Harrison v. Wiggington*, 497 S.E.2d 568, 569 (Ga. 1998).

In sum, A.A.A.'s mere unilateral expectation that its application might be accepted in the Sheriff's discretion does not qualify as a constitutionally protected property interest. Because A.A.A. cannot claim a protected property interest in an unissued, discretionary certificate of authority, it therefore fails the first prong of the *Foxy Lady* test and is unable to allege a procedural due process violation.[3]

The District Court's reliance on *Pryor Organization, Inc. v. Stewart*, 554 S.E.2d 132 (Ga. 2001), is misplaced. *Pryor* is distinguishable because, in that

---

[3] Because we so hold, there is no need to reach the question of Sheriff Brown's qualified immunity.

case, the company had an existing, already-acquired certificate of authority. The lawsuit arose when a new sheriff informed the company that he would not permit it to continue to write bonds in the county. Thus, to the extent that *Pryor* stands for the proposition that the right to operate a bail bonding company is an interest protected by the Georgia constitution, it applies only to the extent that such a right already exists. *Pryor* does not speak to the mere expectation of the discretionary conferring of that right. *See Pryor*, 554 S.E.2d at 487-88 (noting that the case was about "the sheriff's refusal to allow [the Pryor Organization] to *continue* to write bonds" after having "*engaged* in the bail bonding business" via a license for a number of years) (emphasis added).

We reach the same result with respect to the third prong of our procedural due process analysis—i.e., whether there was a constitutionally inadequate process. *Foxy Lady, Inc. v. City of Atlanta, Ga.*, 347 F.3d 1232, 1236 (11th Cir. 2003).

Under the rule established in *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994) (*en banc*), "only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." *Id.* at 1557. We have explained:

> [T]he *McKinney* rule looks to the existence of an opportunity—to

whether the state courts, if asked, generally would provide an adequate remedy for the procedural deprivation the federal court plaintiff claims to have suffered. If state courts would, then there is no federal due process violation regardless of whether the plaintiff has taken advantage of the state remedy or attempted to do so.

*Horton v. Bd. of County Comm'rs of Flagler County*, 202 F.3d 1297, 1300 (11th Cir. 2000). Thus, if Georgia law provides an adequate means to remedy the alleged procedural deprivation, A.A.A.'s § 1983 procedural due process claim fails.

Regardless of whether or not A.A.A. has a constitutionally protected property interest in its application for a certificate of authority, it had an adequate state procedure, the writ of mandamus, to remedy any alleged procedural deprivations. In applying Georgia law, we have previously held that the writ of mandamus can be an adequate state remedy to ensure a party was not deprived of its due process rights. *Cotton v. Jackson*, 216 F.3d 1328, 1333 (11th Cir. 2000); *see also Pryor*, 554 S.E.2d at 136 (holding no due process violation when plaintiff had a hearing in state court concerning his petition for mandamus).

"Under Georgia law, when no other specific legal remedy is available and a party has a clear legal right to have a certain act performed, a party may seek

mandamus."[4] *Cotton*, 216 F.3d at 1332 (citing Ga. Code Ann. § 9-6-20). Mandamus will not normally issue to compel the performance of a discretionary act; however, mandamus is available when a public official has grossly abused his or her discretion. *Pryor*, 554 S.E.2d at 134 (citation omitted). Georgia courts have explained that the "legally flawed exercise of discretion is the same as refusal to exercise any discretion, which is a manifest abuse of discretion." *Id.* (quoting *Wilson v. State Farm Mut. Auto. Ins. Co.*, 520 S.E.2d 917, 920 (Ga. Ct. App. 1999)).

In this case, mandamus would have been available to A.A.A. because at the time of the District court's decision, Sheriff Thomas Brown had refused to exercise any discretion in either approving or denying A.A.A.'s application for a certificate of authority. As a result, A.A.A. could have filed a petition for mandamus in state court, seeking to compel Sheriff Brown to exercise his discretion and make a decision with regards to A.A.A.'s application. Moreover,

---

[4] In recognizing mandamus to be an adequate remedy, we do not have to "express an opinion on the availability of other remedies under Georgia law." *Cotton*, 216 F.3d at 1332 n.3. We have explained:

> [E]ven if other state remedies are available to Plaintiff . . ., our ultimate conclusion would not change. The availability of those remedies, if they are adequate to protect Plaintiff's right[s] . . ., would preclude a procedural due process claim. And, if they are inadequate to protect Plaintiff's right[s] . . ., then mandamus would still be available to Plaintiff, and he would be precluded from bringing a procedural due process claim.

*Id.*

the availability of mandamus as an adequate state remedy should have been evident to A.A.A. because *Pryor*—the case upon which A.A.A. relies in asserting it has a property interest—is a mandamus case. *Pryor*, 554 S.E.2d at 133–36.

Because the writ of mandamus represents an adequate and available state remedy through which A.A.A.'s alleged procedural deprivations could have been corrected, A.A.A. has failed to allege a procedural due process violation.

We reverse and remand to the District Court with instructions to enter summary judgment in favor of Appellants on A.A.A.'s procedural due process claim.

## II. Ripeness

The District Court dismissed A.A.A.'s other claims as not ripe for judicial decision, based upon the fact that Appellants had not yet issued a decision with regard to A.A.A.'s application. As part of its January 20, 2004 order, the Court directed Sheriff Brown to issue a decision on A.A.A.'s application within 45 days. The Sheriff did so. At that time, A.A.A.'s counterclaims necessarily became ripe. We therefore vacate the District Court's order dismissing those claims and remand so that they can be addressed by the District Court in the first instance.

## III. Conclusion

We reverse the order entered by the District Court on January 20, 2004, and

remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.