**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 30, 2017**

# In the Court of Appeals of Georgia

A17A1218. THE STATE v. COUNCIL.

REESE, Judge.

The State appeals from the trial court's grant of Susan Council's motion in limine to suppress the results of a breath test obtained after her arrest for driving under the influence ("DUI").[1] For the reasons set forth, infra, we reverse.

The record shows that, on September 15, 2016, at approximately 9:00 p.m., a multi-vehicle collision occurred involving the Appellee. A Cobb County police officer responded to the scene and began to triage individuals involved in the accident. He spoke to the Appellee to determine if she was injured. The Appellee did not indicate to the officer that she was injured, and she declined medical treatment.

---

[1] The Appellee was also cited for failure to maintain lane/improper lane change and following too closely, pursuant to OCGA §§ 40-6-48, 40-6-49, respectively.

She explained to the officer that she "saw traffic stopping ahead but didn't apply any brakes[.]" After the officer spoke with the Appellee, emergency medical personnel and several firefighters told him "they believed that [the Appellee] was under the influence of alcohol." The officer called for a DUI Task Force Officer ("DUI officer") to continue the investigation.

A DUI officer arrived on the scene and, after speaking with the responding officer, he spoke with the Appellee. The DUI officer observed a strong odor of alcohol on the Appellee and that her eyes were bloodshot and watery. She admitted to having drunk two glasses of wine. During the conversation, the Appellee's phone rang, and the DUI officer permitted the Appellee to answer it. After finishing the phone call, the Appellee blew into a portable Intoxilyzer, which indicated she "tested positive for alcohol." The Appellee initially agreed to participate in the Horizontal Gaze Nystagmus ("HGN") test, but then declined to perform the remaining evaluations after the DUI officer reminded her that those tests were voluntary evaluations to determine if she was safe to drive. The DUI officer testified that there was no animosity during the field sobriety testing and that the Appellee "was polite the entire time."

The Appellee was placed under arrest and handcuffed. When the DUI officer initially started reading the implied consent notice, the Appellee interrupted and requested to stand on the other side of her vehicle, away from traffic. After the Appellee moved to the opposite side of her car, the DUI officer started over and read the implied consent notice. After the Appellee asked the DUI officer whether Georgia's laws had changed, the DUI officer read the implied consent notice to her again. The DUI officer asked the Appellee if she would undergo a breath test, and she consented. The DUI officer then transported the Appellee to a Cobb County Police Precinct station.

On the way to the police station, which was a few minutes away from the accident scene, the Appellee's phone rang, and she asked the DUI officer if she could answer it. He apologized to the Appellee and said he could not allow her to answer her phone. During the conversation, the DUI officer offered to send another officer to check on the Appellee's 14-year-old daughter, who was at home alone. The DUI officer also told the Appellee that, even though it was against the police department's policy, "when we get to the precinct, once we're finished there at the precinct, I'll let you call [your boyfriend] to make sure [your daughter] gets checked on." After

arriving at the police station, the DUI officer removed the Appellee's handcuffs and administered two breath tests.[2]

The Appellee filed a motion in limine to exclude the results of her field sobriety and breath tests. After a hearing, the trial court found probable cause for the Appellee's arrest, granted the Appellee's motion to suppress her HGN test, and ruled that the administration of the breath test violated the Appellee's constitutional rights against self-incrimination. The State filed a timely appeal of the order, challenging the suppression of the breath test results.[3]

> The trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous; where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's

---

[2] The record does not contain documentation of the Appellee's breath test results. See OCGA § 40-6-391 (a) (5) ("A person shall not drive or be in actual physical control of any moving vehicle while . . . [t]he person's alcohol concentration is 0.08 grams or more at any time within three hours after such driving or being in actual physical control from alcohol consumed before such driving or being in actual physical control ended[.]").

[3] The trial court's rulings regarding the HGN test and the finding of probable cause for the arrest of the Appellee are not part of this appeal.

4

application of the law to undisputed facts is subject to de novo appellate review.[4]

In Georgia,

> any person who operates a motor vehicle upon the highways or elsewhere throughout this state shall be deemed to have given consent, subject to [OCGA § 40-6-392], to a chemical test or tests of his or her blood, breath, urine, or other bodily substances for the purpose of determining the presence of alcohol or any other drug, if arrested for any offense arising out of acts alleged to have been committed in violation of [OCGA § 40-6-391] or if such person is involved in any traffic accident resulting in serious injuries or fatalities.[5]

A compelled breath test falls under the protections from unreasonable search and seizure provided by the Fourth Amendment to the United States Constitution and the Georgia Constitution.[6] Further, "[a] consent to search will normally be held voluntary if the totality of the circumstances fails to show that the officers used fear, intimidation, threat of physical punishment, or lengthy detention to obtain the

---

[4] *State v. Gauthier*, 326 Ga. App. 473, 473-474 (756 SE2d 705) (2014) (citation, footnote and punctuation omitted).

[5] OCGA § 40-5-55 (a).

[6] See *Kendrick v. State*, 335 Ga. App. 766, 768 (782 SE2d 842) (2016).

consent."[7] However, consent to a search and/or seizure that is "freely and voluntarily" given "under the totality of the circumstances" eliminates the need for a warrant.[8] With these guiding principles in mind, we turn now to the State's specific claims of error.

The State argues that the trial court erred in ruling that the administration of the breath test violated the Appellee's right against self-incrimination provided by the Georgia Constitution. Specifically, the State argues that the Appellee's right against self-incrimination was not violated because the State did not compel the Appellee to submit to the breath test. We agree.

Under the Georgia Constitution, "[n]o person shall be compelled to give testimony tending in any manner to be self-incriminating."[9] Recently, the Supreme Court of Georgia decided that a compelled breath test also falls under the Georgia Constitutional right against self-incrimination, which protects individuals from

---

[7] *Cuaresma v. State*, 292 Ga. App. 43, 47 (2) (663 SE2d 396) (2008) (footnote omitted).

[8] *Kendrick*, 335 Ga. App. at 768 (citations and punctuation omitted).

[9] Ga. Const. of 1983, Art. I, Sec. I, Par. XVI; See also OCGA § 24-5-506 (a) ("[n]o person who is charged in any criminal proceeding with the commission of any criminal offense shall be compellable to give evidence for or against himself or herself.")

6

having the results of a compelled breath test, or their refusal to submit to such testing, admitted against them in any criminal proceeding.[10] The Court held that the implied consent notice itself is still constitutional because the language of the notice is not *per se* coercive.[11] Moreover, the Supreme Court of Georgia reaffirmed that the right against self-incrimination is not violated where an accused voluntarily consents to the act.[12] "[T]he totality of the circumstances test to determine the voluntariness of an incriminating statement or act for due process purposes is the same test used to determine the voluntariness of a consent to chemical testing in the DUI context."[13]

In its order on the Appellee's motion in limine to suppress, the trial court found that the Appellee "was compelled to [perform the breath test], and to do that act two

---

[10] *Olevik v. State*, No. S17A0738, 2017 WL 4582402 at *12 (2) (c) (iv) (Ga. Oct. 16, 2017) (The Supreme Court of Georgia overruled *Klink v. State*, 272 Ga. 605 (533 SE2d 92) (2000) and its progeny to the extent the cases stand for the proposition that "Paragraph XVI of the Georgia Constitution does not protect against compelled breath tests or that the right to refuse to submit to such testing is not a constitutional right.").

[11] Id. at *16 (3) (b).

[12] Id. at *9 (2) (c) (iii).

[13] Id. at *13 (3) (a) (i) (punctuation omitted).

times, to produce evidence against herself in violation of her Georgia Constitutional right against self-incrimination."

In the present case, the Appellee asked the DUI officer numerous questions about the different field sobriety tests and the breath test throughout the interaction. From the record, including the video recordings of the interaction between the Appellee and the DUI officer, the officer patiently and calmly answered her questions. Further, the Appellee appeared to understand and respond to questions. The DUI officer testified that he did not make any promises in exchange for the Appellee's agreement to submit to a breath test. And, although the DUI officer did not allow the Appellee to make any phone calls until they were finished with the breath tests, there is no evidence that the Appellee was forced to take the breath tests against her will in order to make the phone calls, as the trial court appears to imply. In other words, the Appellee was not going to be allowed to make the calls until she *either* took the breath tests *or* refused to do so. Thus, refusing to allow her to make the calls did not constitute coercion.[14]

---

[14] See *Olevik* at *13 (3) (a) (i).

Therefore, under the totality of circumstances presented in this case,[15] we find that the State did not coerce or compel the Appellee to undergo the breath tests. Thus, her agreement to the breath tests did not violate her right against self-incrimination.[16]

Based on our holding, the Appellee was not compelled to undergo the breath tests. Therefore, we do not reach the State's remaining argument.

*Judgment reversed. Miller, P. J., and Doyle, J., concur.*

---

[15] Id.

[16] Id.